**FILED**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 28 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

RECEIVED
NOV 27 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

| | |
|---|---|
| GOVERNMENT COMPUTER SALES INC., <br><br> Plaintiff - Appellant, <br><br> v. <br><br> DELL MARKETING; DELL INC., <br><br> Defendants - Appellees. | No. 05-35936 <br><br> D.C. No. CV-04-00030-F-RRB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted July 24, 2006
Anchorage, Alaska

Before: KOZINSKI, BERZON, and TALLMAN, Circuit Judges.

Government Computer Sales, Inc. ("GCS"), appeals the district court's dismissal of its Complaint against Dell, Inc. ("Dell, Inc.") and Dell Marketing, LP ("Dell Marketing"), (collectively "Defendants"). See FED. R. CIV. P. 12(b)(6). GCS alleges breach of contract, quantum meruit, fraud, tortious interference, and

---

\*  This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

an Alaska Unfair Trade Practice and Consumer Protection Act claim ("AUTP-CPA") stemming from Dell Marketing's direct sale of its computer products to Alaska public entities beginning on November 14, 2000. Because the parties are familiar with the facts, we do not recite them here.

The June 17, 1998, Remarketer/Integrator Agreements ("R/I Agreements") mandate that GCS' status as a reseller is "not exclusive in any way," and provide that "Dell may sell to and accept orders from any buyer or end user, including [GCS'] customers." The R/I Agreements constitute the complete and entire agreement between the parties, and can be amended only by a signed writing. The R/I Agreements state that Texas law governs the parties' relationship. Alaska law is no different except as to the AUTP-CPA claim.

The R/I Agreements provide that: "[t]his Agreement will terminate upon the termination of the Authorized Contract(s), if any, listed on Schedule A." The R/I Agreements also provide that they will renew from year to year automatically unless terminated on 30-days' notice by one of the parties. GCS does not claim that a Schedule A was attached when it signed the R/I Agreements. Furthermore, neither party terminated the R/I Agreements.

The parol evidence rule bars consideration of the GCS allegation that it made a contemporaneous verbal agreement with Dell Marketing that Dell

Marketing would create a Schedule A, which would have terminated the Agreements in 2000. "It is settled that when contracting parties have concluded a valid integrated agreement, whether written or oral, dealing with the particular subject matter they have between them, the parol evidence rule will prevent enforcement of prior or contemporaneous agreements which are inconsistent with the integrated agreement." *Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App. 1984). Here, the R/I Agreements are valid integrated agreements. The parol evidence rule bars consideration of evidence to modify the terms of the written R/I Agreements. Thus, the R/I Agreements were in effect throughout the course of this dispute.

GCS objects to consideration of the R/I Agreements in a 12(b)(6) motion, but a court may consider a document on a motion to dismiss if that document is integral to the plaintiff's claims and its authenticity is not in dispute, even if the plaintiff elects not to attach that document to its complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 & n.4 (9th Cir. 1998) (superseded by statute on other grounds). The terms of the R/I Agreements define the remarketer relationship at issue in this dispute. Thus, the R/I Agreements are integral to GCS' claims.

GCS did not challenge the authenticity of the R/I Agreements below and cannot do so now for the first time on appeal. Thus, we may properly consider the

3

R/I Agreements. We are satisfied that the R/I Agreements defeat GCS' claims.

**1.** The R/I Agreements defeat GCS' claim that Defendants breached a valid oral contract. Texas law mandates that "[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded." TEX. BUS. & COM. CODE ANN § 2.209(2). Here, the R/I Agreements provide that they are "the exclusive statement of the contract in effect between Dell and [GCS] regarding this subject matter." The R/I Agreements further provide that "this Agreement may not be amended except by a subsequently dated written instrument signed on behalf of both parties by a duly authorized representative." Thus, GCS did not properly plead a breach of contract claim.

**2.** The R/I Agreements defeat GCS' claim for quantum meruit. A plaintiff cannot recover in quantum meruit if there is an express contract covering the services or goods in question. *See Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). Here, the R/I Agreements expressly cover the services that GCS provided to Dell Marketing. Thus, the Defendants have not been unjustly enriched.

**3.** The R/I Agreements defeat GCS' claim for fraud and negligent misrepresentation. GCS claims that Dell Marketing made oral representations promising GCS exclusivity as the reseller of Dell products. Justifiable reliance is

4

an essential element of intentional or negligent misrepresentation. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Justifiable reliance cannot be established where a written contract exists whose terms contradict the oral representation. *See In re U.S. Office Prods. Co. Sec. Lit.*, 251 F. Supp. 2d 58, 75 (D.D.C. 2003) (holding that a party could not reasonably rely on representations made after a contract is formed where those representations are contradicted by the language of the agreement); *Durkee v. Goodyear Tire & Rubber Co.*, 676 F. Supp. 189, 193 (W.D. Wis. 1987) (ruling that a party could not reasonably rely on promises of exclusivity that were contradicted by the contract itself); *Mgmt. Assistance, Inc. v. Computer Dimensions, Inc.*, 546 F. Supp. 666, 672 (N.D. Ga. 1982) (same).

Here, the R/I Agreements provide Dell Marketing with the authority to sell directly to GCS' customers, which clearly conflicts with the alleged oral representations giving GCS the exclusive right to sell Dell products to Alaska public entities. Thus, GCS could not have reasonably relied on the alleged oral representations and GCS did not properly plead a claim for intentional or negligent misrepresentation.

**4.** The R/I Agreements defeat GCS' claim for tortious interference. A defendant cannot be liable for tortious interference with either existing or

prospective contracts if its challenged conduct was privileged or justified. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). Here, the R/I Agreements provide Dell Marketing with the authority to sell directly to GCS' customers. Thus, Dell's direct sales to Alaska public entities were justified under the terms of the R/I Agreements and GCS did not properly plead a claim for tortious interference.

**5.** The R/I Agreements defeat GCS' AUTP-CPA claim. The R/I Agreements' choice-of-law provisions explicitly state that Texas, not Alaska, law governs the parties' relationship.

Finally, the district court did not abuse its discretion in denying leave to amend because the court properly determined "that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). GCS has already been given two previous opportunities to amend its Complaint; an additional opportunity to amend would be futile because GCS has not alleged any additional facts or circumstances that give rise to a claim. It was thus not an abuse of discretion for the district court to deny GCS' request for further leave to amend.

**AFFIRMED.**

FILED

AUG 28 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

*Government Computer Sales, Inc. v. Dell Marketing*, No. 05-35936

BERZON, Circuit Judge, dissenting:

I agree that if the Remarketer/Integrator Agreements ("R/I Agreements") in fact had no Schedule A listing the state contracts in effect at the time they were signed, then the agreements did not terminate with the state contracts in 2000 and defeat all of Government Computer Sales, Inc.'s causes of action. I do not see, however, how we can make that determination on a motion to dismiss.

The complaint alleges that in "the fall of 2000 . . . the written remarketer agreements terminated with the termination of the 1996 State Master Contract." The defendants attached the R/I Agreements, which on their face recognize that they "will terminate upon the termination of the Authorized Contract(s), if any, listed on Schedule A." This language, arguably, contemplates that there *will* be a Schedule A, which will list any extant contracts; if there are any listed, the R/I Agreements would terminate with the expiration of those contracts. One cannot tell by looking at the documents submitted by defendants whether there was or was not a Schedule A attached to them.

Given this feature of the R/I Agreements, nothing on the face of the attached R/I Agreements negates the termination allegations in the complaint or indicates that there is no set of facts that could be proven that is consistent *both* with the

1

termination allegations of the complaint and with the attached R/I Agreements. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The majority's disposition fills in the gap by stating that "GCS does not claim that a Schedule A was attached when it signed the R/I Agreements." But the complaint, construed in the light most favorable to the plaintiff, *see Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005), and read alongside the R/I Agreements, is entirely consistent with proof that there *is* a Schedule A containing a list of contracts with termination dates. The R/I Agreement contemplates that there could be. That is all we have.

Reliance on documents outside the record on a motion to dismiss is proper only if the complaint relies upon them, and then *only* as to matters the documents *unambiguously* establish. As nothing on the face of the R/I Agreements establishes that they did *not* terminate in 2000 because there were contracts listed in a Schedule A and expiring then, the motion to dismiss should not have been granted. Instead, the motion should have been converted to one for summary judgment once the R/I Agreements were submitted, with notice to the parties and, on appropriate motion and showing under Federal Rule of Civil Procedure 56(f), provision for necessary discovery. FED. R. CIV. P. 12(b).

2

A TRUE COPY
CATHY A. CATTERSON
Clerk

by _____
Deputy Clerk